# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN L. FIELDS,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>W.T. VOSS, et al.,<br><br>　　　　　　　Defendants.<br>_____ / | CASE NO. 1:07-cv-00595-AWI-GSA (PC)<br><br>**FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION TO DISMISS BE GRANTED IN PART AND DENIED IN PART**<br><br>(Doc. 25) |

## I.　FINDINGS

### A.　Procedural History

Plaintiff Allen L. Fields ("Plaintiff") is a civil detainee proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 2000cc-1 (the Religious Land Use and Institutionalized Persons Act of 2000, hereinafter "the RLUIPA"). This action is proceeding against Defendants W.T. Voss, Patrick Daley, Mae O'Brien, Linda Clark, and Cindy Maynard on Plaintiff's claim that they violated his rights under the RLUIPA by substantially burdening his religious exercise. (Doc. 13.) Plaintiff is seeking monetary damages, and appears to be suing defendants in both their official and personal capacities. (Doc. 1, Comp.)

On July 9, 2009, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Defendants Patrick Daley, Mae O'Brien, Linda Clark, and Cindy Maynard ("Defendants") filed a motion to dismiss on the grounds that Defendants are entitled to Eleventh Amendment immunity; that Plaintiff may not pursue monetary damages against them in their individual/personal

capacities; and that Plaintiff failed to state a claim upon which relief may be granted under the RLUIPA. (Doc. 25.) Plaintiff filed an opposition on July 22, 2009.[1] (Doc. 26.) Defendants failed to file a reply.

### B. Eleventh Amendment Immunity

In their motion to dismiss, Defendants argue that Plaintiff's claim for damages against them in their official capacities is barred by the Eleventh Amendment. (Doc. 25, Motion, 7:1-8:4.)

It is true that the Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state, *Brooks v. Sulphur Springs Valley Elec. Co.*, 951 F.2d 1050, 1053 (9th Cir. 1991) (citation omitted); *see also Seminole Tribe of Fla. v. Florida*, 116 S.Ct. 1114, 1122 (1996); *Puerto Rico Aqueduct Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993); *Austin v. State Indus. Ins. Sys.*, 939 F.2d 676, 677 (9th Cir. 1991), and "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," and "[a]s such, it is no different from a suit against the State itself." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). However, the RLUIPA was enacted pursuant to Congress' Spending Power under Article I of the Constitution; [the] RLUIPA "[s]ection 3 applies when the 'substantial burden [on religious exercise] is imposed in a program or activity that receives Federal financial assistance' . . . ." *Cutter v. Wilkinson*, 544 U.S. 709, 716 (2005) *quoting* § 2000cc-1(b)(1); *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th Cir. 2002). Congress may create a funding contract that conditions the award of federal monies to the state's waiver of sovereign immunity to private lawsuits seeking to enforce the legislation. *See, e.g., Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 74-75 (1992) (finding that the Spending Power permitted Congress to create a private cause of action against a state institution for a violation of Title IX). By receiving federal funds to assist in the financial burdens of running state prisons, California has consented to being sued for violations of the RLUIPA such that "[t]he Eleventh Amendment does not bar this suit against California State prison officials

---

[1] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on March 29, 2005. <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1120 n.14 (9th Cir. 2003). (Doc. 27.)

under [the] RLUIPA." *Mayweathers,* 314 F.3d at 1069.

Thus, Defendants' motion to dismiss based on Eleventh Amendment immunity from Plaintiff's claims against them in their official capacities for violations of the RLUIPA should be denied.

### C. Monetary Damages Against Defendants in Their Individual Capacities

Defendants argue that Plaintiff cannot pursue money damages against Defendants in their individual/personal capacities as Plaintiff does not allege that Defendants, in their official capacity or otherwise, imposed a "land use regulation" so as to be liable under the RLUIPA. (Doc. 25, Motion, 8:5-9:6.) Defendants also argue that, Plaintiff's allegations regarding the settlement agreement entered by the State of California (in the case of *Victor Wayne Cooper v. State of California, et al.*, Case No. C-02-3712-JSW in the United States District Court for the Northern District of California) show that "Defendants established a regulatory mechanism to provide Plaintiff Kosher meals while at Coalinga State Hospital," and that Plaintiff's allegations that he did not receive Kosher-for-Passover meals during Passover in 2007 is "not an action representing a substantial burden of a *program or activity implementing the land use regulation,*" but rather "isolated instances of errors or failures of individuals to give effect to an agreed-to practices [sic]" and that the "alleged misconduct was not in furtherance of a regulatory program or standard." (*Id.* at 8:20-25, emphasis in original.)

Defendants mistakenly assume that Plaintiff's action is brought for land use regulations under section 2 of the RLUIPA. However, the RLUIPA targets two areas for protection: land use regulation (section 2 of the Act, 42 U.S.C. § 2000cc) and the religious exercise of institutionalized persons (section 3 of the Act, 42 U.S.C. § 2000cc-1). The latter section, which is at issue in actions brought by confined persons, states that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability," unless the government can demonstrate that the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. §

2000cc-1(a).[2]

Section 3 of the RLUIPA affords to prison inmates a "heightened protection from government-imposed burdens," by requiring that the government demonstrate that the substantial burden on the prisoner's religious exercise is justified by a compelling, rather than merely a legitimate, governmental interest. *See Warsoldier v. Woodford*, 418 F.3d 989, 994 (9th Cir.2005) (citation omitted). In doing so, section 3 affords confined persons "greater protection of religious exercise than what the Constitution itself affords." *Lovelace v. Lee*, 472 F.3d 174, 186 (4th Cir.2006). Section 3 applies whenever "the substantial burden on religious exercise is imposed in a program or activity that receives federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1).

### 1. **Money Damages**

While "there is a division of authority" on the question of whether monetary damages are available, this District has found that the RLUIPA's phrase, "appropriate relief," is sufficiently broad to include some forms of monetary relief. *See Guru Nanak Sikh Soc. of Yuba City v. County of Sutter*, 326 F.Supp.2d 1140, 1161-62 (E.D. Cal. 2003). This position is bolstered by "the general rule that all appropriate relief is available in an action brought to vindicate a federal right when Congress has given no indication of its purpose with respect to remedies." *Franklin*, 503 U.S. at 68-69 *ref. J.I. Case Co. v. Borak*, 377 U.S. 426 (1964). In *Franklin*, despite the silence in the statute (Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681) as to available remedies, it was held appropriate to "presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise." 503 U.S. at 66, 112. "Absent clear direction to the contrary by Congress, the federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute" – both injunctive and

---

[2] Unfortunately, there is a dearth of opinions from the Ninth Circuit on claims arising under the RLUIPA. In fact, a search of the Ninth Circuit's published cases with the search term "RLUIPA" renders only nineteen rulings, of which seven rulings addressed land use regulation under section 2, eight rulings addressed claims of substantial burdens on religious exercise of institutionalized persons under section 3, and four rulings merely mentioned the RLUIPA in a footnote, or noted that the claims therein were not raised under the RLUIPA. Where the Ninth Circuit has specifically ruled on an issue arising under the RLUIPA it is noted and followed. On issues raised in this motion that have not been addressed by the Ninth Circuit, this Court has reached conclusions based on opinions from other Circuit Courts (mostly the Eleventh Circuit) which have arrived at similar rulings and/or have used similar rationale to the Ninth Circuit when both have addressed a given issue under the RLUIPA.

4

monetary. *Id*.

While the Ninth Circuit has not specifically addressed the issue of whether monetary damages are available under the RLUIPA, the Eleventh Circuit has held that,

> [i]n light of *Franklin* and its progeny, . . . the use of the phrase 'appropriate relief' in section 3 of [the] RLUIPA, 42 U.S.C. § 2000cc(a), is broad enough to encompass the right to monetary damages in the event a plaintiff establishes a violation of the statute. Congress expressed no intent to the contrary within [the] RLUIPA, even though it could have, by, for example, explicitly limiting the remedies set forth in § 2000cc(a) to injunctive relief only. Instead, Congress used broad, general language in crafting the remedies section of [the] RLUIPA, stating that a prevailing party could obtain "appropriate relief." 42 U.S.C. § 2000cc(a). We assume that, when Congress acted, it was aware of *Franklin's* presumption in favor of making all appropriate remedies available to the prevailing party. . . . In light of that presumption, we conclude that, absent an intent to the contrary, the phrase "appropriate relief" in [the] RLUIPA encompasses monetary as well as injunctive relief.

*Smith v. Allen*, 502 F.3d 1255, 1270-71 (11th Cir. 2007). This Court concurs with the Eleventh Circuit's analysis. Plaintiff is allowed to pursue monetary damages for his claim(s) under the RLUIPA.

### 2. **Individual/Personal Capacities**

As previously mentioned, section 3 of the RLUIPA was enacted pursuant to Congress' Spending Power under Article I of the Constitution; "[s]ection 3 [of the RLUIPA] applies when the substantial burden on religious exercise is imposed in a program or activity that receives federal financial assistance," *Cutter*, 544 U.S. at 716 (alterations and internal quotations omitted); *Mayweathers*, 314 F.3d at 1066, and by receiving federal funds to assist in the financial burdens of running state prisons, California has consented to being sued for violations of the RLUIPA. *Mayweathers*, 314 F.3d at 1069 n.3 (noting that federal funding is part of California's annual prison operating budget – despite it totaling less than one percent).

The Spending Clause of the Constitution provides, in pertinent part, that "Congress shall have the Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States." U.S. Const. art I., § 8, cl. 1. Accordingly, "Congress may attach conditions on the receipt of federal funds" and may "further its broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." *South Dakota v. Dole*, 483

5

U.S. 203, 206 (1987) (citation and quotations omitted). Congress' Spending legislation typically grants federal funds to state institutions in exchange for the state's compliance with certain conditions which has been described as creating a "contract" between the federal government and the recipient state. *See Floyd v. Waiters*, 133 F.3d 786, 789 (11th Cir.1998) (citation omitted), vacated on other grounds, 525 U.S. 802, reinstated at 171 F.3d 1264 (11th Cir.1999).

While Title IX and the RLUIPA are not identical legislation, most of the circuit courts have drawn parallels between the RLUIPA and Title IX with which this Court concurs. *See e.g. Rendelman v. Rouse*, 569 F.3d 182, 188-89 (4th Cir. 2009); *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 328-29 (5th Cir. 2009); *Cutter v. Wilkinson*, 423 F.3d 579, 585 (6th Cir. 2005)*; Nelson v. Miller*, 570 F.3d 868, 886-889 (7th Cir. 2009); *Mayweathers*, 314 F.3d 1067; *Hartley v. Parnell*, 193 F.3d 1263 (11th Cir. 1999).

While the Ninth Circuit has not addressed the issue, other circuit courts and district courts have ruled that individual officials are not the recipients of federal funds so as to be liable in their personal capacities under legislation which is enacted pursuant to Congress' spending power. *See Jennings v. Univ. of North Carolina*, 444 F.3d 255, 268 n. 9 (4th Cir.2006) ("Title IX was enacted pursuant to Congress' spending power and prohibits discriminatory acts by funding recipients. Because school officials are not funding recipients under Title IX, school officials may not be sued in their individual capacities under Title IX"); *Sossamon*, 560 F.3d at 328-29 *citing Pederson v. LSU*, 213 F.3d 858, 876 (5th Cir.2000) and *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 654 (5th Cir.1997)) (noting that the Fifth Circuit had adopted a rule that Spending Clause legislation can only generate liability for funding grant recipients); *Nelson,* 570 F.3d 868 (holding that the RLUIPA does not allow for suits against prison officials in their individual capacity); *Smith v. Allen*, 502 F.3d at 1275 (holding individual officers are "not 'recipients'"of federal funding such "that section 3 of [the] RLUIPA-a provision that derives from Congress' Spending Power-cannot be construed as creating a private action against individual defendants for monetary damages"); *see also, e.g., Moxley v. Town of Walkersville*, 601 F.Supp.2d 648, 660 (D.Md.2009) (agreeing with the rationale in *Smith v. Allen*, and holding that a personal capacity suit may is not available against an individual defendant under the

RLUIPA); *Pugh v. Goord*, 571 F.Supp.2d 477, 507 (S.D.N.Y.2008) (finding the reasoning in *Smith v. Allen* convincing, and concluding that the RLUIPA does not provide for money damages against defendants in their individual capacities); *Boles v. Neet*, 402 F.Supp.2d 1237, 1240 (D.Colo.2005) ("The Court understands [the RLUIPA] to permit cases against a governmental entity, but not against an individual officer, except perhaps in his or her official capacity"); *Hale O Kaula Church v. Maui Planning Comm'n*, 229 F.Supp.2d 1056, 1067 (D.Haw.2002) (holding that the RLUIPA does not allow for suits against prison officials in their individual capacity); *Boles*, 402 F.Supp.2d at 1241 (holding that the RLUIPA does not allow for suits against prison officials in their individual capacity).

It appears most reasonable, based on the weight and reasoning of the available authority, to conclude that actions may not be brought against prison officials in their individual capacities under section 3 of the RLUIPA as they are not the recipient of federal funds to which the RLUIPA standards apply. *Smith v. Allen*, 502 F.3d at 1271-75; *Nelson*, 570 F.3d at 886-889[3]; *Sossamon*, 560 F.3d at 328-29; *see also, e.g., Moxley*, 601 F.Supp.2d at 660 (agreeing with the rationale in *Smith v. Allen*, and holding that a personal capacity suit is not available against an individual defendant under the RLUIPA); *Pugh*, 571 F.Supp.2d at 507 (concluding that the RLUIPA does not provide for money damages against defendants in their individual capacities); *Boles*, 402 F.Supp.2d at 1240 ("The Court understands [the RLUIPA] to permit cases against a governmental entity, but not against an individual officer, except perhaps in his or her official capacity").

---

[3] The Seventh Circuit noted that "[t]he Ninth Circuit appears to have assumed that the RLUIPA allows for individual capacity suits because it affirmed a district court's grant of qualified immunity to a defendant official under the statute." *Nelson v. Miller*, 570 F.3d 868, 887 n.11 (7th Cir. 2009) *citing Campbell v. Alameida*, 295 Fed.Appx. 130, 131 (9th Cir.2008). It does not appear to this Court that the ruling in *Campbell* was intended to have precedential effect as to whether an official may be sued in his official and/or individual capacity under the RLUIPA and the Court declines to join in the Seventh Circuit's evaluation and does not find any such implications as binding precedent in this case as *Campbell* was a one page unpublished opinion from the Ninth Circuit which does not directly address this issue, but only tangentially infers that a personal capacity suit might be possible based on the affirmation of a grant of qualified immunity. It is of further note that the Seventh Circuit made this notation only as a footnote in opposition to a statement that the only other circuit courts to address the issue have found that state officials could not be held liable in their individual capacities under the RLUIPA. *Nelson*, 570 F/3d at 887 citing *Smith v. Allen* and *Sossamon*. It is also important to note that, after this discussion, the Seventh Circuit ultimately held that actions may not be brought against prison officials in their individual capacities under section 3 of the RLUIPA as they are not the recipient of federal funds to which the RLUIPA standards apply. *Id*. at 886-889.

Further, the Eleventh Circuit has specifically held (in a Title IX context) that statutes based on Congress' spending power cannot be used to subject a non-recipient of federal funds, including a state official acting in his or her individual capacity, to private liability for monetary damages. *Hartley*, 193 F.3d at 1270.

Accordingly, while it appears Plaintiff may pursue Defendants in their official capacities, and is not precluded from seeking monetary damages, he may not seek monetary damages from them in their personal/individual capacities. Thus, Defendants' motion to dismiss Plaintiff's claims for monetary damages against them in their individual/personal capacities should be granted.

### D. Failure to State a Claim

Defendants move for dismissal for Plaintiff's failure to state a claim against them by arguing that Plaintiff's allegations are sparse conclusions that fail to allege any actual conduct by Defendants that resulted in a violation of Plaintiff's rights. (Doc. 25, Motion, 5:1-66:26.)

The Complaint alleges that Plaintiff, who holds a deep and sincere faith in Judaism, did not to receive Kosher-for-Passover meals from April 2, 2007 through April 10, 2007. Instead, Plaintiff was served regular Kosher meals which contained food that Plaintiff was forbidden not only to eat, but to possess or obtain. (Doc. 1, Compl., ¶ 15.) In essence, for almost nine days, Plaintiff was required to either abandon his religious beliefs, or starve. (Doc. 26. P&A in Opp., Doc. 26, pp. 4-5.)

Defendants do not argue that Plaintiff received the correct meals from April 2, 2007 through April 10, 2007, or that the failure to be served such meals did not substantially burden Plaintiff's religious exercise so as to fail to state a claim. Rather they argue for dismissal on the basis that Plaintiff's allegations are vague and conclusory and fail to allege any actual conduct by Defendants which demonstrate that they were responsible for Plaintiff not receiving the appropriate meals during Passover in 2007, or acted in any way to further a regulation or policy to restrict Plaintiff's religious practices. (Doc. 25, Motion, pp. 5-6.)

The RLUIPA provides:

No government shall impose a substantial burden on the religious exercise of a

>person residing in or confined to an institution. . . , even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–
>(1) is in furtherance of a compelling government interest; and
>(2) is the least restrictive means of furthering that compelling government interest.

42 U.S.C. § 2000cc-1. Plaintiff bears the initial burden of demonstrating that defendants substantially burdened the exercise of his religious beliefs. *Warsoldier*, 418 F.3d at 994-95. If Plaintiff meets his burden, Defendants must demonstrate that "any substantial burden of [plaintiff's] exercise of his religious beliefs is *both* in furtherance of a compelling governmental interest *and* the least restrictive means of furthering that compelling governmental interest." *Id.* (emphasis in original). The "RLUIPA is to be *construed broadly* in favor of protecting an inmate's right to exercise his religious beliefs." *Id.* (emphasis added).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) *quoting Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

" '[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss, are not entitled to an assumption of truth.' " *Moss v. U.S. Secret Service*, 572 F.3d 962,

969 (9th Cir. 2009) (*quoting Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1951 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). " 'Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion-even if that conclusion is cast in the form of a factual allegation.' " *Id.*[4] " 'A claim has facial plausibility . . . when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.' " *Id. quoting Iqbal*, 126 S.Ct. at 1951 (*quoting Twombly*, 550 U.S. at 556). " 'Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." ' " *Id. quoting Iqbal*, 126 S.Ct. at 1951 (*quoting Twombly*, 550 U.S. at 557). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id. quoting Iqbal*.

Plaintiff alleges that Defendant Daley "[was] responsible for overseeing education services and religious activities, and [was] directly involved in burdening Plaintiff's religious exercise" and that "Plaintiff complained to defendant Daley, and to his hospital unit staff, that he was not being given food that he was permitted to consume during the Passover period, [but that] defendant Daley refused to exercise his authority to correct Plaintiff's Passover diet." (Doc. 1, Compl., ¶¶ 5 & 16.) These allegations are sufficiently specific to state a cognizable claim against Defendant Daley. Defendants' motion to dismiss Plaintiff's claim against Defendant Daley for failure to state a claim should be denied

Plaintiff alleges that Defendant O'Brien "[was] responsible for training and overseeing of the dieticians employed by her and for the menu planning and execution of the special dietary needs of residents . . . including Plaintiff's 'Kosher-for-Passover' religious diet" and that

---

[4] In *Iqbal*, the plaintiff's conclusory allegation that former Attorney General Ashcroft and FBI Director Mueller knowingly and willfully subjected the plaintiff to harsh conditions of confinement "solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest" did not state a cognizable claim. *Iqbal* at 1951 (*quoting* Plaintiff's complaint).

10

"Plaintiff contacted defendant O'Brien, through his social workern, [sic] to adjust Plaintiff's Passover meals correctly, according to Jewish law; however defendant O'Brien refused to adjust Plaintiff's Passover meals because she claimed the cost was too high." (*Id.* at ¶¶ 6 & 17.) These allegations are sufficiently specific to state a cognizable claim against Defendant O'Brien. Defendants' motion to dismiss Plaintiff's claim against Defendant O'Brien for failure to state a claim should be denied

Plaintiff alleges that Defendant Maynard "[was] responsible for the ordering and delivery of Kosher-for-Passover meals to Plaintiff" and that "Defendant Maynard had assured Plaintiff over the three-month period preceding Passover that all arrangements had been made to provide Kosher-observant Jews with their Kosher-for Passover meals and related food items (*e.g.*, matzah); however, upon the advent of Passover, it was shown that defendant Maynard's assurances were false." (*Id.* at ¶¶ 8 & 18.) These allegations are sufficiently specific to state a cognizable claim against Defendant Maynard. Defendants' motion to dismiss Plaintiff's claim against Defendant Maynard for failure to state a claim should be denied.

Plaintiff alleges that Defendant Clark "[was] responsible for religious activities of hospital residents; and [was] specifically responsible for ensuring that Jewish individuals receive Kosher-for-Passover diets." (*Id.* at ¶ 7.) These allegations appear premised on a respondeat superior theory of liability and are not factually specific so as to state a cognizable claim against Defendant Clark as Plaintiff does not allege what Defendant Clark did or did not do that interfered with Plaintiff's receipt of Kosher-for-Passover food on the dates in question. Defendants' motion to dismiss Plaintiff's claim against Defendant Clark for failure to state a claim should be granted with leave to amend.

Plaintiff alleges that Defendant Voss "[was] responsible for ensuring that Plaintiff's rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act of 2000 . . . are not unjustifiably burdened without a compelling government interest implemented by the least restrictive means" and that "Defendant Voss failed and refused to ensure Plaintiff would be able to eat Kosher-for-Passover foods during the 2007 Passover observance; and further failed to correctly train the other defendants who refused to provide

Plaintiff with Kosher-for-Passover foods during said period." (*Id.* at ¶¶ 4 & 19.) These allegations appear premised on a respondeat superior theory of liability and are not factually specific so as to state a cognizable claim against Defendant Voss as Plaintiff does not allege what Defendant Voss did or did not do that interfered with Plaintiff's receipt of Kosher-for-Passover food on the dates in question. Further, as to Plaintiff's allegations that Defendant Voss failed to properly train subordinates, in *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that, under certain circumstances, a municipality may be held liable based on the failure to train its employees. This Court finds no authority for the extension of *City of Canton* and its progeny to a state prison official. It appears to this Court, following a review of the relevant case law, that the cases involving failure to train are limited to suits against city and county entities. This is not to say that Plaintiff cannot allege facts involving the failure to train that are sufficient to state a claim under a theory of supervisory liability. However, to do so, he must state allegations so as to meet the requirements set forth in *Hansen v. Black*, 885 F.2d at 646; *Taylor v. List*, 880 F.2d at 1045 (to wit: Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation'"). Plaintiff makes no allegations to address the *Hansen* requirements. Defendants' motion to dismiss Plaintiff's claim against Defendant Voss for failure to state a claim should be granted with leave to amend.

## II. RECOMMENDATIONS

Based on the foregoing, the Court recommends that Defendants' motion to dismiss for based on Eleventh Amendment immunity from Plaintiff's claims against them in their official capacities for violations of the RLUIPA be denied. However, the Court recommends that Defendants' motion to dismiss Plaintiff's claims for monetary damages against them in their individual/personal capacities be granted. The Court also recommends that Defendants' motion to dismiss for failure to state a claim against them be denied as to Plaintiff's claims against Defendants Daley, O'Brien, and Maynard; but that Defendants' motion to dismiss for failure to

12

state a claim against them be granted with leave to amend as to Plaintiff's claims against Defendants Clark and Voss.

Accordingly, it is HEREBY RECOMMENDED that Defendants' motion to dismiss, filed July 9, 2009, be GRANTED IN PART and DENIED IN PART as follows:

1. Defendants' motion to dismiss based on Eleventh Amendment immunity from Plaintiff's claims against them in their official capacities for violations of the RLUIPA be DENIED;

2. Defendants' motion to dismiss Plaintiff's damages claims against them in their official capacities on Eleventh Amendment immunity grounds be GRANTED;

3. Defendants' motion to dismiss this action based on Plaintiff's failure to state a claim upon which relief may be granted under the RLUIPA be DENIED as to Defendants Daley, O'Brien, and Maynard;

4. Defendants' motion to dismiss this action based on Plaintiff's failure to state a claim upon which relief may be granted under the RLUIPA be GRANTED with leave to amend as to Defendants Clark and Voss; and

5. Plaintiff's claim against Defendants Clark and Voss be dismissed, pursuant to 42 U.S.C. sect 1997e(a) without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:    **February 3, 2010**              **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE